## CITY OF LAKE OSWEGO,
*Appellant,*

*v.*

## BABSON,
*Defendant,*

*and*

## CASEY,
*Respondent.*

(84-6-103; CA A43073 (Control))

## CITY OF LAKE OSWEGO,
*Appellant,*

*v.*

## CASEY,
fka Nutt,
*Respondent.*

(84-6-185; CA A43074)
(Cases consolidated)

776 P2d 870

Sandra N. Duffy, Deputy City Attorney, Lake Oswego, argued the cause and filed the briefs for appellant. With her on the reply brief was James M. Coleman, Lake Oswego.

Richard C. Bemis, Milwaukie, argued the cause for respondent. With him on the brief were David Gernant, Portland, and James E. Redman and Redman & Bemis, Milwaukie.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

In this eminent domain case, city appeals from two separate judgments[1] awarding respondent $39,365 and $47,858 and requiring city to take the fee titles to the properties that are subject to the easements. Plaintiff argues that the trial court erred in requiring it to acquire the fees and in its valuation of the properties. We reverse and remand.

In March, 1984, city adopted a resolution declaring a public necessity to acquire certain real property interests in conjunction with the widening and improving of Lower Boones Ferry Road. The project was funded by the state and federal governments. Among the interests that city sought to acquire were two easements on property owned by respondent. The easements run along the back lines of Tax Lot 2400 and Tax Lot 2900, which abut each other along their rear property lines. Tax Lot 2400 is a 63,665 square-foot parcel with two single-family residences on it. Tax Lot 2900 is a 41,473 square-foot parcel containing one single-family residence. Both lots are in a zone that permits the development of single-family dwellings with a minimum lot area of 5,000 square feet. The easement on Tax Lot 2400 would encompass 35,780 square feet, and the easement on Tax Lot 2900 would encompass 22,150 square feet. The easements would be for the construction, operation and maintenance of drainage facilities, including a storm water detention pond.[2] After a trial without a jury, the court held that the acquisition of the easements would render the fee interests in the land underlying the easements valueless and ordered city to acquire and pay for fee title to the portions of the properties subject to the easements.

A city has the authority to acquire private property for public use. ORS 223.005(1). ORS 223.010 specifically authorizes a city to enter upon, survey, examine and select any property for the purpose of constructing or maintaining a

---

[1] This appeal involves two separate actions that were consolidated for purposes of trial and appeal.

[2] The interests sought by city were described in the complaint:

"A permanent easement across the following described real property for the purpose of constructing, operating and maintaining drainage facilities including a storm water detention pond in connection with the project. Since fee simple title is not being acquired, any use may be made of the real property provided that such use shall not interfere with the purpose of this easement."

drainage system. However, as a general rule, no greater interest can be taken than is necessary to accomplish the intended public use. *Pacific Livestock Co. v. Warm Springs,* 270 F 555 (9th Cir 1921).

**1.**    City determined that it was only necessary to acquire easements. Respondent's argument that city should be required to take fee interests is based on the "uneconomic remnant" theory. Under that theory, a condemnor may be required to acquire more property than it needs for a proposed public use, if the effect of the more limited condemnation is to leave the property owner with an uneconomic remnant. 2A Nichols, *Eminent Domain* 7-171 § 7.25 (1987).

**2.**    The theory is applicable to the acquisition of property by public bodies in Oregon. ORS 281.060 provides, in pertinent part:

> "Whenever any program or project is undertaken by a public entity which program or project will result in the acquisition of real property, notwithstanding any other statute, charter, ordinance, or rule or regulation, the public entity shall:
>
> "* * * * *
>
> "(3)    In acquiring the real property, be guided by the land acquisition policies in section 301 and the provisions of section 302 of [the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 USC § 4651 *et seq*]."

The federal act requires that, "[i]f acquisition of only part of a property would leave its owner with an uneconomic remnant, the head of the Federal agency concerned shall offer to acquire the entire property." 42 USC § 4651(9).[3]

The term "uneconomic remnant" was not defined in the statute at the relevant time. Generally, it means property that remains after a taking that is of such shape or size as to be of no practical value to its owner. 2A Nichols, *Eminent*

---

[3] In 1987, after the taking in issue here, the federal act was amended to define an "uneconomic remnant" as

"a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property and which the head of the Federal agency concerned has determined has little or no value or utility to the owner." Pub. L. 100-17 Title IV § 416, 418, 101 Stat 255, 256 (1987).

*Domain* 7-175 § 7.25(1) (1987). The Federal Highway Administration, which administers the federal act, defined "uneconomic remnant" in its regulations as:[4]

"A remaining part of land, after a partial acquisition, that is of little or no utility or value to the owner." 23 CFR § 710.104(g) (1985).

**3.** Respondent contends that the fee interest in each parcel of land subject to the easements in this case is an uneconomic remnant. There are several problems, however, with this particular application of the theory. First, it is not clear whether it ever applies when an easement, rather than a fee, is taken. The statutes do not directly address the issue, and we have found no case in which the theory has been considered in the taking of an easement. However, even assuming that it does apply to an easement taking, it is not applicable in this case, because the remnants here are not valueless. Contrary to respondent's assertions, the property remaining after the taking includes not only the fee interests in the land that will be subject to the easements, but also the portions of the property that are not subject to the easements. In view of the fact that the tax lots are zoned for residential development and are currently developed with existing homes, they are not valueless.[5] The trial court erred in requiring city

---

[4] The trial court also considered Oregon Department of Transportation guidelines, which state:

"If the acquisition of only part of the property would leave its owner with an uneconomic remnant, the head of the [political subdivision] shall offer to acquire the entire property.

"The remaining property will be considered *uneconomic* when an appraisal shows that the *highest and best use has changed* to a degree that it contributes little or no utility and/or value to the remaining *parent* property, *if any,* or that it has little or no utility or value standing alone. If the remaining property is determined to be an uneconomic remnant, the political subdivision *shall offer* to acquire the entire property. The property owner has the option of selling the remainder to the political subdivision or retaining the remaining property." (Emphasis supplied.)

The guidelines apparently have not been adopted as administrative rules and, thus, do not have any binding legal effect in this context. Because the project in this case was federally funded, federal law controls. ORS 281.105. Even if the guidelines were rules, they would have to be interpreted and applied consistently with applicable federal requirements.

[5] Severance damages are the proper remedy to redress any decrease in the value of the remaining property as a result of the easements.

to take fee interests on an uneconomic remnant theory.[6]

Respondent also contends that we may uphold the award of compensation here, even if it was error to apply the uneconomic remnant theory, because there was expert testimony that the damages would be the same, regardless of whether city took fee interests or easements. However, even if respondent is correct, it is clear that the trial court's award of compensation was based on application of the uneconomic remnant theory, and it would be speculative to assume that the trial court would have found the expert testimony persuasive. We cannot say as a matter of law that the compensation awarded would be the same if only easements were taken.[7]

Reversed and remanded.

---

[6] Respondent also argues that, even if the uneconomic remnant theory is not applicable, we may uphold the award of compensation in this case under the common law rule that a condemnee may be compensated for a fee interest if the permanent easement taken renders the underlying fee valueless. *See Smith v. City of Tallahassee*, 191 So 2d 446 (Fla App 1966). However, as discussed above, the remaining property is not valueless.

[7] In view of our holding, we need not address plaintiff's remaining assignments of error.